## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL J. ORTIZ-MEDINA,           :
      Plaintiff           :
                  :           No. 1:19-cv-2133
      v.           :
                  :           (Judge Rambo)
E. BRADLEY, *et al.*,           :
      Defendants           :

## MEMORANDUM

On December 17, 2019, *pro se* Plaintiff Daniel Ortiz-Medina ("Plaintiff"), who is currently incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"), initiated the above-captioned action by filing a complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Defendants E. Bradley ("Bradley"), the Warden of USP Canaan, and FNU Bodge ("Bodge"), an S.I.S. Officer at USP Canaan. (Doc. No. 1.) He also filed a handwritten motion for leave to proceed *in forma pauperis*. (Doc. No. 2.) In an administrative Order dated December 17, 2019, the Court directed Plaintiff either to pay the requisite filing fee or submit a complete motion for leave to proceed *in forma pauperis* within thirty (30) days. (Doc. No. 5.) The Court received Plaintiff's completed motion for leave to proceed *in forma pauperis* on January 13, 2020. (Doc. No. 6.) Pursuant to the Prison Litigation

Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of the complaint. For the reasons set forth below, the Court will grant Plaintiff's motions to proceed *in forma pauperis* and dismiss the complaint with leave to amend.

## I. BACKGROUND

Plaintiff alleges that he arrived at USP Canaan on December 10, 2018 and "immediately requested protection" because he feared for his life and safety as a "drop-out gang member." (Doc. No. 1 at 4.) Plaintiff was told to complete some paperwork detailing why he needed to be placed in protective custody, which he did. (*Id.*) Plaintiff was placed in the Special Housing Unit ("SHU") pending an S.I.S. investigation. (*Id.*) He alleges that the investigation was started by S.I.S. Rosehance but was then passed to Defendant Bodge. (*Id.*)

When Plaintiff's cellmate in the SHU was released to general population, Plaintiff asked him to pass on a letter to members of the G-27 and Black Hand gangs, asking them if it was safe for Plaintiff to come out of protective custody. (*Id.*) Plaintiff asked this because, he alleges, Defendant Bodge told him that he "was going to rot in [the SHU] if [he] did not debrief." (*Id.* at 5.) Plaintiff responded that he

[1] *See* The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

had not been a gang member since 2001 and therefore had no information "about any gang." (*Id.*)

On March 21, 2019, Defendant Bodge brought Plaintiff a memorandum asking him to indicate whether or not he would debrief. (*Id.*) Plaintiff signed "where it stated that [he] wouldn't debrief." (*Id.*) Defendant Bodge then told Plaintiff that the G-27 and Black Hand members told her that Plaintiff "couldn't come out to the general population because [he] was no good [and] that they would have to kill [him]." (*Id.*) Plaintiff maintains that Defendant Bodge "ignored their statements [and] continued focused and obsessed in making [him] debrief which never happened." (*Id.*) Plaintiff grieved the issue, and Defendant Bradley responded "that there was nothing he could be able to do because he had to go through whatever the S.I.S. investigation decided." (*Id.*)

Plaintiff remained in the SHU for seven (7) months until he was transferred to USP McCreary and then FMC Lexington. (*Id.* at 5-6.) He maintains that while in the SHU, he was not given his property, including his legal property. (*Id.* at 6.) Plaintiff claims that his inability to access his legal property affected various motions that were pending in his criminal case in the United States District Court for the District of Puerto Rico as well as a civil lawsuit that was dismissed without prejudice by the United States District Court for the Middle District of Florida. (*Id.*) Plaintiff alleges that Defendants' actions also caused him emotional and mental distress in

violation of 18 U.S.C. § 2340, and that they "left Plaintiff without communication with family members, friends, courts, lawyers, etc." (*Id.* at 6-7.)

Based on the foregoing, Plaintiff asserts that his rights under the First, Fifth, Sixth, and Eighth Amendments were violated. (*Id.* at 6.) As relief, he seeks compensatory and punitive damages. (*Id.* at 7.)

## II.     LEGAL STANDARD

### A.     Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint. *See* 28 U.S.C. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding *in forma pauperis* and prisoners challenging prison conditions. *See* 28 U.S.C. § 1915(e)(2)(B) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined

in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted.").

A complaint is frivolous if it lacks an arguable basis either in law or fact. *See Mitchell v. Horn*, 381 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)). When deciding whether a complaint fails to state a claim on which relief may be granted, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Smithson v. Koons*, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See Iqbal*, 556 U.S. at 679; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of *pro se* prisoner litigation, a district court must be mindful that a document filed *pro se* is "to be liberally construed." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards

than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle*, 429 U.S. at 106) (internal quotation marks omitted)).

## B.    *Bivens* Claims

A *Bivens* civil rights action asserted under 28 U.S.C. § 1331 is evaluated using the same standards applicable to a 42 U.S.C. § 1983 civil rights action. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under *Bivens*, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. *See Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

## III.    DISCUSSION

### A.    Plaintiff's Complaint

#### 1.    Claims Under 18 U.S.C. § 2340

Plaintiff alleges that Defendants' actions caused him emotional and mental distress in violation of 18 U.S.C. § 2340, which criminalizes torture. Criminal statutes, however, "do not generally provide a private cause of action nor basis for civil liability." *Wartluft v. Milton Hershey Sch. and Sch. Trust*, 400 F. Supp. 3d 91, 109 (M.D. Pa. 2019) (quoting *Concert v. Luzerne Cty. Children & Youth Servs.*, No. 3:08-cv-1340, 2008 WL 4753709, at *3 (M.D. Pa. Oct. 29, 2008)); *see also Kervin v. City of New Orleans*, No. 06-3231, 2006 WL 2849861, at *3 (concluding that § 2340 provides no private cause of action because § 2340(B) "explicitly provides

that nothing in the chapter 'shall . . . be construed as creating any substantive or procedural right enforceable by law by any party in any civil proceeding'"). Accordingly, Plaintiff's claims pursuant to 18 U.S.C. § 2340 will be dismissed.

### 2. Claims Against Defendant Bradley

It appears that Plaintiff attempts to assert claims against Defendant Bradley by virtue of his participation in after-the-fact review of Plaintiff's grievance concerning his placement in the SHU and his refusal to debrief. (Doc. No. 1 at 5.) Inmates, however, do not have a constitutional right to prison grievance procedures. *See Lions v. Wetzel*, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Pressley v. Beard*, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); *Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); *Ramos v. Pa. Dep't of Corr.*, No. 06-1444, 2006 WL 2129148, at *3

(M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), *aff'd*, 142 F.3d 430 (3d Cir. 1998).

Consequently, any claims asserted by Plaintiff in an attempt to establish liability against Defendant Bradley based solely upon the substance of their respective responses, or lack thereof, to his grievances or administrative remedies does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for liability); *see also Brooks*, 167 F. App'x at 925; *Ramos*, 2006 WL 2129148, at

*3. Accordingly, the Court will dismiss Plaintiff's claims against Defendant Bradley.

### 3. First Amendment Claims

As noted above, Plaintiff alleges that he was denied his legal property and access to his attorney while he was incarcerated in the SHU, which affected pending motions in his criminal case as well as a civil lawsuit he had filed in the Middle District of Florida. (Doc. No. 1 at 6-7.) A liberal reading of Plaintiff's complaint also suggests that he may be raising a claim for retaliation against Defendant Bodge and raising a claim regarding the denial of communication with family and friends. The Court considers each claim in turn below.

### a. Access to the Courts Claim

It is well-settled that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "In order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must allege that his efforts to pursue a legal claim were hindered and he suffered an actual injury." *Ross v. Clerk of Courts of Court of Common Pleas of Philadelphia*, 726 F. App'x 864, 865 (3d Cir. 2018) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). "[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). A complaint raising an access to the courts claim

"must describe the underlying claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Christopher v. Harbury*, 536 U.S. 403, 416-18 (2002).

Plaintiff's complaint, as pled, fails to set forth a plausible access to the courts claim. Plaintiff vaguely alleges that he was denied the use of his legal materials and access to his attorney, but fails to describe what legal materials he was denied or the claims those materials would allegedly support and how access to his attorney would have supported such claims. *See Heath v. Link*, 787 F. App'x 133, 136 (3d Cir. 2019) (concluding same regarding legal materials). Moreover, Plaintiff has not alleged any facts about the merits of his underlying criminal and civil claims, let alone allege that he suffered an actual injury. *See Presbury v. Wetzel*, --- F. App'x ----, No. 19-2586, 2020 WL 110234, at *1-2 (3d Cir. Jan. 9, 2020) (concluding same). Accordingly, Plaintiff's access to the courts claim is subject to dismissal.[2]

### b. Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330,

---

[2] Plaintiff also fails to allege that the named Defendants were the ones who denied him use of his legal materials. *See Rode*, 845 F.2d at 1207 (noting that to survive dismissal, a plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights).

333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Plaintiff appears to suggest that Defendant Bodge retaliated against him by keeping him the SHU after Plaintiff refused to debrief about gang activity. The complaint, however, fails to suggest that Plaintiff engaged in constitutionally protected activity. Several courts, including courts within the Third Circuit, have concluded that the refusal to act as an information or provide information regarding fellow inmates is not constitutionally protected activity. *See, e.g., Anderson v. Dohman*, No. 18-cv-3508, 2018 WL 4186396, at *5 (E.D. Pa. Aug. 30, 2018) (refusal to provide names of allegedly "dirty" officers was not protected activity); *Woolfolk v. Meier*, No. 2:17-cv-3513, 2018 WL 1773397, at *4 (E.D. Pa. Apr. 12, 2018) (dismissing prisoner's retaliation claim because prisoner's refusal to provide information about which prisoners possessed contraband was not protected activity); *Jackson v. Dohman*, No. 11-6890, 2013 WL 775598, at *2-3 (E.D. Pa. Mar. 1, 2013) (explaining that a prisoner has no protected right to refuse to give information to

officials in connection with an internal investigation); *see also Ayala v. Harden*, No. 1:12-cv-281-AWI-DLB PC, 2012 WL 4981269, at *2 (E.D. Cal. Oct. 17, 2012) ("Refusal to become an informant is not a protected First Amendment activity."); *Hermosillo v. Santa Clara Cty.*, No. C 08-915 JF (PR), 2008 WL 2156994, at *2 (N.D. Cal. May 21, 2008) (concluding that the refusal to cooperate with officials as an informant is not protected activity). Accordingly, Plaintiff's First Amendment retaliation claim is subject to dismissal at this time.

### c. Denial of Communication Claim

Plaintiff asserts that Defendants' actions "literally left [him] without communication with family members [and] friends." (Doc. No. 1 at 7.) "Inmates have a right protected under the First Amendment to communicate with their family and friends by reasonable means." *Stokes v. Lanigan*, No. 12-1478, 2012 WL 4662487, at *5 (D.N.J. Oct. 2, 2012); *see also Almahdi v. Ashcroft*, 310 F. App'x 519, 521-22 (3d Cir. 2009) (noting that the "constitutional right at issue has been described as the right to communicate with people outside prison walls").

To the extent Plaintiff is alleging that he was unable to receive visits as a form of communication, "there is no constitutional right to visitation." *Flanagan v. Shively*, 783 F. Supp. 922, 934 (M.D. Pa. 1992); *see also Neumeyer v. Beard*, 301 F. Supp. 2d 349, 351 (M.D. Pa. 2004). Furthermore, inmates "ha[ve] no right to unlimited telephone use." *Almahdi*, 310 F. App'x at 522. "[W]here a prisoner has

access to alternative means of communicating with family and friends outside of prison, such as via the mail or in person visits, restrictions on telephone use are viewed as less serious and are more likely to be found reasonable." *Love v. New Jersey Dep't of Corr.*, No. 14-5629 (SDW), 2015 WL 2226015, at *3 (D.N.J. May 12, 2015). Plaintiff's complaint, as pled, is devoid of factual allegations regarding how Defendants caused him to be unable to communicate with family and friends. Accordingly, Plaintiff's First Amendment claims regarding the denial of communication are subject to dismissal at this time.

### 4. Fifth Amendment Claims

Plaintiff maintains further that Defendants violated his Fifth Amendment rights, presumably by depriving him of property and by placing him in the SHU. The Court considers each claim in turn below.

### a. Deprivation of Property

The Fifth Amendment provides, in part, that no person shall be deprived of property without due process of law. U.S. Const. amend. V. Due process claims for negligence deprivations of property, however, are barred by *Daniels v. Williams*, 474 U.S. 327, 328 (1986). The Third Circuit has held that an inmate fails to state a procedural due process claim regarding intentional deprivations of property when he is provided with a meaningful post-deprivation remedy regarding the loss of his property through an internal grievance procedure. *Mattis v. Dohman*, 260 F. App'x

458, 461 (3d Cir. 2008) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Thus, "the relevant inquiry is whether an adequate post-deprivation remedy was available to [Plaintiff] to address the loss of his property." *Toney v. Sassaman*, No. 4:11-cv-780, 2014 WL 1056826, at *11 (M.D. Pa. Mar. 18, 2014), *aff'd*, 588 F. App'x 108 (3d Cir. 2015). The Bureau of Prisons ("BOP")'s Administrative Remedy Program "allows inmates to seek formal review of an issue relating to any aspect of his or her confinement." *Id.* The BOP "also has an administrative tort claims procedure whereby a federal inmate may file a claim with regard to his damaged or lost property." *Id.* Plaintiff does not allege in his complaint that these procedures were not available to him. Accordingly, he has failed to set forth a plausible Fifth Amendment due process claim regarding the deprivation of his property at this time.

### b. Placement in the SHU

Plaintiff also suggests that his seven (7)-month placement in USP Canaan's SHU violated his Fifth Amendment due process rights. Inmates, however, have "no legitimate statutory or constitutional entitlement" to any particular custodial classification. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). The Due Process Clause protects liberty interests created by the laws or regulations of a state. *See Sandin v. Conner*, 515 U.S. 472, 483 (1995). These interests, however, "will be generally limited to freedom from restraint" which imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

*Id.* at 484. When deciding whether a protected liberty interest exists, courts "consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486).

Plaintiff's complaint, as pled, does not lead to a plausible inference that his placement in USP Canaan's SHU for seven (7) months imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, Plaintiff has not implicated a protected liberty interest. *See Robinson v. Norwood*, 535 F. App'x 81, 83-84 (3d Cir. 2013) (affirming that inmate's placement in the SHU at USP Lewisburg did not violate his due process rights); *Wilson v. Hogsten*, 269 F. App'x 193, 195 (3d Cir. 2008) (inmate's complaint that he was kept in the SHU during a ten (10)-month internal investigation was not a cognizable constitutional claim). Accordingly, Plaintiff's Fifth Amendment due process claim regarding his placement in the SHU will be dismissed.

### 5.     Sixth Amendment Claims

Plaintiff claims that his Sixth Amendment rights were violated, presumably based upon his allegation that he was unable to communicate with his lawyers. (Doc. No. 1 at 6-7.) The Sixth Amendment provides that "[in] all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right, however, "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings." *Texas v. Cobb*, 532 U.S. 162, 167-68 (2001). Here, Plaintiff, a convicted prisoner, fails to allege that he was subject to any further criminal charges or that he was currently in the process of an appellate or collateral attack on his conviction during the relevant time. Accordingly, Plaintiff has failed to set forth a plausible Sixth Amendment claim at this time. *See Love*, 2015 WL 2226015, at *4 (concluding same regarding convicted prisoner's Sixth Amendment claim).

### 6.     Eighth Amendment Claims

Finally, Plaintiff alleges that Defendants' actions violated his Eighth Amendment rights. (Doc. No. 1 at 6.) There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards. An Eighth Amendment claim includes both objective and subjective components. *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Serious hardship to

the prisoner is required to satisfy the Eighth Amendment's objective component. *See id.* The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." *See id.*

Here, Plaintiff's complaint is devoid of factual allegations regarding how Defendants violated his Eighth Amendment rights. He has not alleged that he was exposed to adverse conditions of confinement while in the SHU, and simply being placed in the SHU is insufficient to set forth a violation of the Eighth Amendment. *See Johnson v. Burris*, 339 F. App'x 129, 131 (3d Cir. 2009); *see also Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir. 1991) (noting that placing an inmate in restricted housing does not violate the Eighth Amendment "as long as the conditions of confinement are not foul, inhuman or totally without penological justification"); *Milhouse v. Arbasak*, No. 07-1442, 2009 WL 1119488, at *3 (E.D. Pa. Apr. 27, 2009) (concluding that mere placement in the SHU did not implicate the Eighth Amendment). Likewise, the deprivation of property is insufficient to maintain an Eighth Amendment claim. *See Young v. Edward*, No. 17-cv-1736, 2018 WL 4616245, at *3 (M.D. Pa. Sept. 26, 2018). Accordingly, Plaintiff's Eighth Amendment claims are subject to dismissal as well.

## B.    Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely

deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002).

Here, it would be futile to permit Plaintiff to amend his claim pursuant to 18 U.S.C. § 2340. Likewise, it would be futile to permit Plaintiff to amend his Fifth Amendment due process claim regarding his placement in the SHU. *See Johnson*, 339 F. App'x at 131 (affirming conclusion that granting leave to amend would be futile because the complaint, as amended, would fail to state a due process claim upon which relief could be granted). However, with respect to Plaintiff's remaining constitutional claims, it is neither clear that amendment would be futile nor is there any basis to believe that amendment would be futile, nor is there any basis to believe that amendment would be inequitable. Accordingly, Plaintiff will be granted leave

to file an amended complaint with respect to all claims except his Fifth Amendment due process claim regarding placement in the SHU and his claims brought pursuant to 18 U.S.C. § 2340.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motions for leave to proceed *in forma pauperis* (Doc. Nos. 2, 6) and dismiss his complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).   Plaintiff will be given leave to file an amended complaint regarding all claims except his Fifth Amendment due process claim regarding placement in the SHU and his claims brought pursuant to 18 U.S.C. § 2340.   An appropriate Order follows.

s/Sylvia H. Rambo
Sylvia H. Rambo
United States District Judge